UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEJUAN REAVES,<br><br>       Plaintiff,<br><br>v.<br><br>MADDEN et al.,<br><br>       Defendants. | Case No.: 23-cv-254-DMS-KSC<br><br>**REPORT AND RECOMMENDATION RE DEFENDANTS' MOTION TO DISMISS [Doc. No. 15]** |

  Defendants' Motion to Dismiss Plaintiff's Complaint is presently before the Court. *See* Doc. No. 30. Pursuant to 28 U.S.C. § 636(b)(1) and Civil Local Rule 72.1, the undersigned Magistrate Judge submits the following Report and Recommendation ("R&R") to United States District Judge Dana M. Sabraw. As the Court will explain, because the Court finds plaintiff's Complaint fails to state a claim for relief as to some of the named defendants, the Court **RECOMMENDS** the District Court **GRANT IN PART AND DENY IN PART** defendants' Motion to Dismiss.

  ////

  ////

  ////

## I.     Introduction

Plaintiff Kejuan Reeves is presently incarcerated at the Richard J. Donovan Correctional Facility ("RJD"). *See* Doc. No. 1 at 1. He alleges he was talking to his family members using a prison phone on August 15, 2022, when defendants Rodriguez and Lugo ordered him to get off the phone. *Id.* at 6. Rodriguez and Lugo allegedly ordered him to "cuff up" after plaintiff refused to hang up the phone. *Id.* Plaintiff protested the order to "cuff up" by sitting on the floor, crossing his arms in front of him, and demanding that a sergeant to be called. *Id.* Rather than call the sergeant, Lugo and Rodriguez activated the prison's alarm, flipped plaintiff over onto his stomach, and then, with the aid of other, unnamed guards who arrived after the alarm sounded, kneed plaintiff in the ribs while he was prostrate on the floor with his arms crossed below him. *Id.* at 6-7.[1] One of the guards pressed a knee across the back of plaintiff's neck, which left plaintiff unable to breathe "in a normal manner." *Id.* at 9. Because of the pain caused by being "kneed in the ribs" and the loss of his ability to breathe, plaintiff allowed himself to be cuffed and removed. *Id.* at 12. Plaintiff alleges that his compliance could have been secured with lesser force. *Id.* at 12.

As alleged, the guards present during the incident should have known plaintiff suffers from a heart condition because "most" of the guards who responded to the alarm

---

[1]     Plaintiff repeatedly incorporates the California Department of Corrections and Rehabilitation Department Operations Manual ("DOM") section 33030.19(D)(27) into his Complaint. *See, e.g.*, Doc. No. 1 ¶¶ 9-27. The DOM is publicly available at https://www.cdcr.ca.gov/regulations/wp-content/uploads/sites/171/2023/05/2023-DOM.pdf. The specific section identified by plaintiff specifies the penalty that can be imposed (as a matter of the California Department of Corrections and Rehabilitation's employee discipline policies) on employees if they fail to fail to stop another employee for violating other departmental policies. It does not, in and of itself, identify how any of the conduct alleged in the Complaint is a violation of any particular CDCR policy. The Court notes that CDCR's policy on the use of force, rather than being voluntarily prescribed by the DOM, is actually prescribed by regulation in Title 15 of the California Code of Regulations at section 3268.

on August 15, 2022, had also responded to a medical emergency in January 2022 when plaintiff suffered a heart attack. *Id.* at 13. Defendant Flores, at the time the acting sergeant, did not knee plaintiff in the ribs or crush plaintiff's neck, but he stood idly by and refused to stop other prison guards from using excessive force on plaintiff. *Id.* at 11. Plaintiff alleges Flores intentionally failed to intervene during the incident. *Id.* at 13.

Defendants Martinez, Steadman, and Madden are all supervisory employees with increasing degrees of authority over the guards who allegedly beat plaintiff. *Id.* at 2. Each of them is on notice about the potential for excessive force at the prison because "a lawsuit was filed against employees there." *Id.* at 14-15. Accordingly, the three defendants with supervisory authority should have informed correctional officers not to use excessive force on inmates, implemented policies to prevent the use of excessive force, and taken action against the defendants who assaulted plaintiff. *Id.*

Plaintiff seeks money damages of $500,000 and an injunction against any retaliation based on his exercise of the "right" to file this section 1983 case against defendants. *Id.* at 19. All defendants now move to dismiss the Complaint. Doc. No. 15. This Court ordered plaintiff to file a response to the pending Motion to Dismiss by August 2, 2023. Doc. No. 16. Plaintiff filed no response in opposition and did not timely move to continue the deadline for any such filing. This Court will address the merits of the pending Motion notwithstanding plaintiff's failure to respond.

**II.    Whether The Complaint Should be Dismissed Under Rule 12(b)(6)**

Defendants move to dismiss on various grounds. *See generally* Doc. No. 15. They argue the Complaint fails to state a claim against any of the named defendants. *Id.* at 5-10, 14-15. They further contend plaintiff failed to exhaust his administrative remedies against defendants Flores, Martinez, Madden, or Steadman. *Id.* at 10-14. Finally, they suggest all defendants are entitled to qualified immunity. *Id.* at 14-17.

A motion to dismiss pursuant to Rule 12(b)(6) "tests the legal sufficiency of a complaint." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). To survive such a motion, a complaint must plead "enough facts to state a claim to relief that is plausible on

its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

In assessing whether the Complaint meets these standards, the Court must "accept all allegations of material fact in the complaint as true and construe them in the light most favorable to the non-moving party." *Cedars-Sinai Med. Ctr. v. Nat'l League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007). However, the Court need not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001), *as amended by* 275 F.3d 1187 (9th Cir. 2001). Similarly, the Court is not required to assume the truth of "allegations that contradict matters properly subject to judicial notice or by exhibit." *Id.* "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citation omitted).

With some exceptions, the Court's analysis on a Rule 12(b)(6) motion is limited to the "face of the complaint." *Van Buskirk v. Cable News Network*, *Inc*., 284 F.3d 977, 980 (9th Cir. 2002). However, "[i]f a complaint is accompanied by attached documents," the Court may treat those documents as part of the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes.").

In determining whether plaintiff has stated both a "cognizable legal theory" and "sufficient facts … to support" that theory, the Court keeps in mind that pleadings drafted by lay inmates are "held to less stringent standards than formal pleadings drafted by lawyers." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Nevertheless, the Court may not "supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). The Court also need not

"accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Ileto v. Glock, Inc.*, 349 F.3d 1191, 1200 (9th Cir. 2003). The Court will address all of defendants' arguments in turn.

### (A)   Whether Plaintiff States a Claim Against Any Named Defendant

Defendants mount a two-pronged attack based on the sufficiency of the pleadings. *See* Doc. No. 15 at 8. First, as to defendants Lugo, Rodriguez, and Flores, all of whom were present during the incident involving plaintiff, defendants argue plaintiff has not pleaded an excessive force claim because the allegations of the Complaint "establish that the force [used against plaintiff] was not unreasonable and was for the purpose of restoring order and gaining [p]laintiff's compliance with lawful orders." *Id.* Second, defendants Steadman, Madden, and Martinez, who were not present during the incident, suggest plaintiff's claim is "essentially solely based on their liability as supervisors," and that plaintiff does not plead "any facts to establish that any of these supervisory defendants were personally involved in any of the Constitutional violations." *Id.*

The "unnecessary and wanton infliction of pain" upon inmates constitutes cruel and unusual punishment in violation of the Eight Amendment of the United States Constitution. *See Whitely v. Albers*, 475 U.S. 312, 320-21 (1986). When prison guards have been accused of using excessive force in the context of a "prison disturbance" and an ostensible effort to restore order, the validity of an Eighth Amendment claim turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). This Court will separately analyze whether plaintiff states a claim against the defendants present during the incident and against the supervisory defendants who were not present during the incident.

### (1)   Whether Plaintiff States a Claim Against the Defendants Present During the Incident

Defendants suggest this case should be dismissed under *Beard v. Kimble*, 2:08-cv-137-CAS, 2015 WL 4662694, 2015 U.S. Dist. LEXIS 102848 (E.D. Cal. Aug. 15, 2015)

on the grounds that plaintiff has failed to state an Eighth Amendment claim against the defendants who kneed plaintiff in the ribs, kneeled on his neck to asphyxiate him, and/or stood idly by during the alleged assault. *See* Doc. No. 15 at 7-9. In *Beard*, an inmate had received a minor surgical procedure and had instructions to report to the infirmary on a daily basis for rebandaging. *See* 2015 U.S. Dist. LEXIS 102848, at *3-4. The inmate in that case alleged a prison guard refused to allow him to report to the infirmary for his daily treatment and ordered him to return to his cell, and the inmate refused to return to his cell until a sergeant had been called. *Id.* at 4. Although plaintiff made no physical or verbal threats, the guard sprayed him with mace. *Id.* The court ruled the allegations were not sufficient to state claim for excessive force against the guard. *Id.* at *13-14. The court reasoned the guard had used reasonable force to secure plaintiff's compliance with an order to return to his cell because the guard's actions fell within the scope of conduct permissible under CDCR's use of force policy. *Id.* (citing 15 Cal. Code. Regs. § 3268(a)(1)).

This Court first notes the obvious: the unreported *Beard* case is not binding on this Court and need not be followed. In any event, this Court does not share the *Beard* court's conviction that any use of force by a prison guard arguably compliant with the CDCR use of force policy is per se not "excessive" for purposes of an Eighth Amendment claim. Further, *Beard* is distinguishable because the analysis therein rested on the defendant's compliance with CDCR's use of force policy. But that policy, which applies in this case exactly as it did in *Beard*, expressly *precludes* the use of chokeholds or other restraints that impede an inmate's ability to breathe normally. *See* 15 Cal. Code. Regs. § 3268(c)(2). In this case, unlike *Beard*, plaintiff alleges at least one prison guard "put[] his [or her] knee on [plaintiff's] neck," which "prevent[ed] [plaintiff] from breathing in a normal manner." Doc. No. 1 at 9. Thus, unlike in *Beard*, the guards here were allegedly not compliant with CDCR's use of force policy, and, even if the Court followed *Beard*, dismissal would not be warranted.

When the Complaint is construed in the light most favorable to the plaintiff, which is this Court's obligation at this stage, plaintiff alleges these defendants subjected him to

an illegal chokehold, and otherwise beat him more than was necessary to secure his compliance. Plaintiff also pleads facts sufficient to support an inference of malice because he alleges defendants knew or should have known that plaintiff was particularly fragile on account of his heart condition, but they nonetheless kneed him repeatedly in the ribs and choked him near the point of asphyxiation when a simple application of pepper spray would have sufficed to secure his compliance. The allegations state a claim for excessive force against the three defendants who were present during the incident. This Court accordingly recommends the District Judge **DENY** without prejudice the Motion to Dismiss as to defendants Lugo, Rodriguez, and Flores.

### (2) Whether Plaintiff States a Claim Against the Supervisory Defendants Not Present During the Incident

Defendants Martinez, Steadman, and Madden argue the District Court should dismiss the claims against them because plaintiff "has not alleged any direct and affirmative actions by any of these [d]efendants which would subject them to liability." Doc. No. 15 at 21. "A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (citing *Ybarra v. Reno Thunderbird Mobile Home Village*, 723 F.2d 675, 680-81 (9th Cir. 1984)). "There is no respondeat superior liability under section 1983." *Id.*

Plaintiff alleges defendant Martinez knew about the potential for excessive force being used against inmates because "a lawsuit was filed . . . for assaulting inmates." Doc. No. 1 at 14-15. Plaintiff alleges Martinez (a correctional captain) failed to discipline any of the guards who used excessive force against plaintiff, and from that basis he concludes Martinez "allowed" the incident involving plaintiff to occur. *Id.* The inference that Martinez affirmatively allowed the incident to occur because he did not discipline anyone after it occurred is not reasonably drawn from the allegations of the Complaint. Plaintiff has not alleged Martinez took any affirmative action (or failed to act when he was under a

duty to do so) that actually led to the use of force against plaintiff. Thus, plaintiff has not stated an Eighth Amendment claim against Martinez.

Plaintiff also alleges defendants Madden and Steadman (respectively, the warden and associate warden of RJD) both knew about the potential for excessive force being used against inmates because of another lawsuit in which RJD employees were accused of "assaulting" inmates, yet both defendants failed to implement policies that would have prevented the use of excessive force against plaintiff. *Id.* at 15. The Court has already noted CDCR already has a use of force policy in effect that prohibits at least some of the force allegedly used against plaintiff. *See generally* 15 Cal. Code. Regs. § 3268. Thus, short of formally directing RJD employees to disregard the policy—which plaintiff does not allege and which would almost certainly be rank speculation if he did allege it—the Court cannot conceive of anything defendants Madden and Steadman could do in the arena of policymaking that could create liability under the Eighth Amendment. Plaintiff has therefore failed to state an Eighth Amendment claim against Madden or Steadman.

Because plaintiff failed to state a claim for an Eighth Amendment violation against defendants Martinez, Madden, and Steadman, the Complaint against these defendants is subject to dismissal. However, this is plaintiff's first pleading, and it is conceivable that plaintiff might discover facts to support his allegations that one or all of these defendants took specific and particularized action (or failed to take such action when they were under a duty to do so) to participate in, direct the commission of, or intentionally fail to prevent the incident involving plaintiff. Accordingly, the Court recommends the Complaint be **DISMISSED WITH LEAVE TO AMEND** as to defendants Martinez, Madden, and Steadman.

### (B)     Whether Plaintiff Failed to Exhaust Administrative Remedies

Defendants also argue plaintiff failed to exhaust his administrative remedies against defendants Martinez, Steadman, and Madden. Doc. No. 15 at 17. The administrative exhaustion requirement imposed by 42 U.S.C. section 1997e(a) is a "precondition to suit" by a prisoner alleging a cause of action arising under section 1983. *Cano v. Taylor*, 739

F.3d 1214, 1219 (9th Cir. 2014). Failure to exhaust is ordinarily an affirmative defense, which a defendant must plead and prove, and should generally be raised, at the earliest, via a motion for summary judgment. *See Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014). "In the rare event that a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)." *Id.* The purpose of the exhaustion requirement is to allow state corrections officials an opportunity to informally resolve prisoner complaints before allowing federal lawsuits to proceed, which provides "prisons with a fair opportunity to correct their own errors." *See Woodford v. Ngo*, 548 U.S. 81, 93-94.

To satisfy the exhaustion requirement, an inmate does not need to supply the agency with every picayune detail of his grievance, and he need not provide the agency with an exhaustive recitation of every cause of action he might later file in a lawsuit. *See Gonzalez v. Ahmed*, 67 F. Supp. 3d 1145, 1153 (N.D. Cal. 2014). At bottom, the agency must be given notice of a problem, and the inmate will have exhausted his administrative remedies as to claims arising on facts the agency "'should discover during its investigation of the claim.'" *Id.* (quoting *Gomez v. Winslow*, 177 F. Supp. 2d 977, 982 (N.D. Cal. 2001)); *cf. Harvey v. City of San Diego*, 9-cv-740-DMS-RBB, 2011 WL 843975, 2011 U.S. Dist. LEXIS 23012, at *15-16 (S.D. Cal. Mar. 8, 2011) (Sabraw, J.) (allowing claims to proceed beyond summary judgment against an individual defendant not specifically named in an EEOC complaint if the individual's involvement was connected to the events alleged in the grievance).

Defendant Flores, Martinez, Steadman, and Madden suggest the Complaint against them should be dismissed because none of them are specifically named in the administrative grievance, which is incorporated into the operative Complaint. *See* Doc. No. 15 at 20. Defendants do not cite a case in which a court appropriately dismissed a complaint subject to the PLRA because a particular defendant was not individually named, and they do not adequately explain how, as a matter of law, the failure to identify them by name in the grievance form demonstrates plaintiff's failure to exhaust administrative remedies. The

grievance form at issue here informs the agency of the basic facts about how he was subjected to an unlawful use of force. It is reasonable to conclude the involvement of defendants Flores, Martinez, Steadman, and Madden during its investigation might have been discovered during an administrative investigation. And in any event, that question is a uniquely factual inquiry that should be proven by the party carrying the ultimate burden of proof on an exhaustion defense, and it is therefore not properly resolved on the pleadings. Thus, the plaintiff has not pleaded himself out of court here by failing to name defendants Flores, Martinez, Steadman, and Madden. It is therefore recommended the District Court **DENY** without prejudice the motion to dismiss defendants Flores, Martinez, Steadman, and Madden on exhaustion grounds.

### (C)   Whether Defendants Are Entitled to Qualified Immunity

Defendants suggest the Complaint should be dismissed in its entirety under the qualified immunity doctrine. *See* Doc. No. 15 at 22-23. Defendants correctly state that a qualified immunity defense is available where a reasonable corrections officer would not know that his actions violate a plaintiff's constitutional rights. *See id.* at 23 (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). In the Ninth Circuit, force can be constitutionally "excessive" when officers kneel on a prone person who is otherwise detained and thereby cause him to asphyxiate. *See Drummond v. City of Anaheim*, 343 F.3d 1052, 1059 (9th Cir. 2003). Plaintiff alleges correctional officers flipped him over onto his stomach, kneeled on him in a manner that injured his ribs, and crushed his neck so he couldn't breathe. *See* Doc. No. 1 at 6-12. He further alleges less excessive force could have secured his compliance. *See id.*

Although *Drummond* is a Fourth Amendment case, as opposed to an Eighth Amendment case, and therefore the use of force would be evaluated under different standards, this Court can see no reason to distinguish *Drummond* because, as the Court previously noted, chokeholds are expressly prohibited by the CDCR's use of force policy. Defendants' recharacterization of the Complaint as alleging the use of "minimal force" creates a factual discrepancy that precludes the issuance of an order dismissing claims

based on qualified immunity. This Court therefore recommends the District Judge **DENY** without prejudice the Motion to Dismiss on qualified immunity grounds.

### III.   Conclusion and Order

Plaintiff's Complaint fails to plead an Eighth Amendment violation by defendants Martinez, Madden, and Steadman. The Court recommends the Motion to Dismiss be **GRANTED WITH LEAVE TO AMEND** as to those defendants.

Plaintiff has alleged an Eight Amendment violation against defendants Lugo, Rodriguez, and Flores, and the Court recommends the Motion to Dismiss be **DENIED** without prejudice with respect to those defendants.

Because an affirmative defense of qualified immunity or failure to exhaust administrative remedies is not apparent on the face of the Complaint, the Court recommends the Motion to Dismiss be **DENIED** without prejudice on those grounds.

**IT IS HEREBY ORDERED** that no later than **September 25, 2023**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation." The parties are advised that any failure to timely file objections may waive the right to raise those objections on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties no later than **fourteen** days after the filing of any objections.

**IT IS SO RECOMMENDED AND ORDERED**.

Dated:  August 24, 2023

Hon. Karen S. Crawford
United States Magistrate Judge